## A00A0306. BROWN v. THE STATE.
(537 SE2d 421)

ELDRIDGE, Judge.

Fred Brown appeals from a DeKalb County jury's verdict finding him guilty of possession of cocaine with intent to distribute. We affirm his conviction.

Viewing the facts in a light most favorable to the verdict,[1] the charge arose when a concerned citizen telephoned the Atlanta Police Department to report that a male wearing jeans, a black leather jacket, and a purple hat was standing beside a white car at the corner of Meadowlake Drive and Walton Lane in the Eastlake Meadows Housing Development, selling drugs from the car. Officer W. C. Jones arrived at that location to find defendant Brown dressed in jeans, a black leather jacket, and a purple hat. Brown was standing "right next to a white automobile." Brown was the only person standing near the car. Brown was the only person dressed in jeans, a black leather jacket, and purple hat. When he saw the officer, Brown started to walk away. The officer stopped him; the car was investigated. There was a broken backseat window where Brown had been standing. A plastic bag containing 58 hits of crack cocaine, packaged in individual ziplock baggies, was in plain view and accessible on the backseat of the car. The car belonged to Brown.

1. Brown contends that the trial court erred in permitting the officer to testify as to the content of the concerned citizen's tip, because such was "double hearsay." We disagree. The content of the citizen's tip was substantively admissible as original evidence to explain the officer's conduct in going to Eastlake Meadows and in briefly detaining Brown, specifically for further investigation.[2]

2. We find no merit to Brown's three claims of error with regard to the admission of a similar transaction guilty plea to possession of cocaine.

(a) Brown contends that "there was no evidence presented that demonstrates that Appellant committed the independent offense,"

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] OCGA § 24-3-2. See *Ross v. State*, 210 Ga. App. 455, 456 (436 SE2d 496) (1993); *Scruggs v. State*, 227 Ga. App. 35, 36 (2) (488 SE2d 110) (1997).

per *Williams v. State*.[3] At trial, however, there was no dispute whatsoever that Brown committed the similar transaction offense to which he pled guilty: "[Defense counsel:] He admitted his guilt to that, one hit, where it was in his possession. He admitted it was in his possession." To the extent that Brown now tries to raise on appeal an identity issue under *Williams v. State*, it is waived.[4]

(b) Brown claims insufficient similarity between the instant offense and the prior act. However, the facts of the prior offense were sufficiently similar to the instant offense so that proof of the one tends to prove the other. The prior act involved the same type of drug, crack cocaine; the prior offense occurred at precisely the same locale, standing outside at 315 Meadowlake Drive in Eastlake Meadows Housing Development; and the prior offense involved a lesser included offense to the one now charged, possession of cocaine/possession of cocaine with the intent to distribute. The trial court's finding of similarity was not clearly erroneous.[5]

(c) The State called Atlanta Police Detective A. Lee to present a factual basis for Brown's 1990 guilty plea to possession of cocaine. Lee was one of the officers who arrested Brown for the prior offense. He had no independent recollection of the event. The State put forth the facts contained in the police report of the prior incident under the business records exception to the hearsay rule.[6] Defense counsel conceded the prosecutor's position that case law would permit admission of the facts contained in a police report under such exception:

> [Defense counsel:] I think she's [prosecutor] right. Here's another one just like it, another case. But she [prosecutor] has to follow the rules. . . . And if there is an officer — if there is anyone that works in that section or who is familiar with the operations of that section, then that's necessary to lay the foundation.[7]

---

[3] 261 Ga. 640, 641 (409 SE2d 649) (1991).

[4] *Kight v. State*, 242 Ga. App. 13, 18 (528 SE2d 542) (2000); *Kincer v. State*, 208 Ga. App. 360 (1) (430 SE2d 597) (1993).

[5] *Tate v. State*, 230 Ga. App. 186, 188 (2) (495 SE2d 658) (1998); *Cantrell v. State*, 210 Ga. App. 218, 220-221 (435 SE2d 737) (1993); *Collins v. State*, 205 Ga. App. 341, 343 (2) (422 SE2d 56) (1992).

[6] Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

OCGA § 24-3-14 (b).

[7] The facts contained in a police report are admissible under the business records exception to the hearsay rule. *Gann v. State*, 190 Ga. App. 82, 83 (1) (378 SE2d 369) (1989); *Reed v.*

Thereafter, the prosecutor laid a proper foundation for the admission of the report through the testimony of Detective Lee. Lee identified the police report, testified that he is familiar with the method of keeping such reports, testified that such reports are made in the regular course of business, and testified that such police reports were made at the time of the event or shortly thereafter.[8]

On appeal, Brown contends that the foundation was insufficient because Lee did not write the report and had no personal knowledge of the incident.[9] However, Lee "d[id] not have to have personal knowledge of the correctness of the records or have made the entry himself" in order to lay the foundation for the admission of the report under the business records exception to the hearsay rule.[10]

At trial, Brown objected to the introduction of the police report on the basis of foundation. He did not object to the specific contents of the report as inadmissible. Our review shows the content of the police report to be factual:

> On the 15th of August, Officer Little, Lee and myself were driving through Eastlake Meadows when Mr. Smith [co-defendant] flagged us down. I then exited the vehicle and walked toward Mr. Smith. Mr. Smith asked me how many did I want, and I told him five sacks. Mr. Smith then told me to drive around the horseshoe and take the man — and talk to the man in the red shirt and red hat.[11] . . . *When I approached Mr. Brown, he had a plastic bag in his hands with several hits of suspected crack inside. Mr. Brown was in the process of selling drugs to another suspect standing next to him. Mr. Brown asked me how many did I want. I told him one. Mr. Brown handed me one hit of suspected crack cocaine and in return I gave him $10 cash. We then advised Mr. Brown that we were the police and that he was under arrest. Mr. Brown then threw down the plastic bag.*

(Emphasis supplied.) This first person recitation of the facts by the officer who witnessed and conducted the transactions referred to in the police report contained no opinions or conclusions about what the

---

*Heffernan*, 171 Ga. App. 83, 84 (1) (318 SE2d 700) (1984); *Johnson v. State*, 168 Ga. App. 271, 272 (1) (308 SE2d 681) (1983); *Pickett v. State*, 123 Ga. App. 1, 2 (2) (179 SE2d 303) (1970).

[8] *Hertz Corp. v. McCray*, 198 Ga. App. 484, 485 (2) (402 SE2d 298) (1991); see *McBride v. State*, 213 Ga. App. 857, 859 (6) (446 SE2d 193) (1994).

[9] The officer who wrote the report had relocated to Sacramento, California.

[10] *Hertz Corp. v. McCray*, supra at 485 (2); *Davis v. State*, 194 Ga. App. 902, 904 (2) (392 SE2d 327) (1990); *Whittington v. State*, 155 Ga. App. 667 (2) (272 SE2d 532) (1980).

[11] Admissible under OCGA § 24-3-2.

officer saw.[12] Brown pled guilty to the offense. At trial, Brown did not dispute the facts as stated in the police report. Under these circumstances, the police report was admissible under the business records exception to the hearsay rule. The trial court did not err in admitting the similar transaction evidence.[13]

3. Next, Brown claims ineffective assistance of trial counsel, because his defense attorney failed to call two witnesses: (a) Brown's girlfriend, Janice Whitmore; and (b) Vanessa Clifton, who claimed to be the "concerned citizen" who called the police.

The two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington*[14] asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense, that is, whether there is a reasonable possibility that the outcome of the proceedings would have been different but for counsel's deficiency. A trial court's finding on motion for new trial that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous.[15]

(a) At the motion for new trial, Brown's trial attorney testified that he was very familiar with Brown's girlfriend, Whitmore: "I have known her a long time, and she can get a little hostile, and I didn't want to put her in front of the jury."

(b) Trial counsel testified that he interviewed Clifton. Trial counsel prepared a videotape of Clifton and decided not to call her at trial because:

> anytime I asked her a question, she would look up in outer space. She has some kind of mental problem or I don't know emotional problem or what. I thought the jury would think all of the movements, no eye contact, etcetera [sic], would mean she was lying.

The decision of which defense witnesses to call is a matter of trial strategy for the attorney and does not constitute ineffective assistance of counsel.[16] Accordingly, the trial court's finding that Brown received effective assistance of counsel at trial was not clearly erroneous.

---

[12] See *Malcolm v. State*, 263 Ga. 369, 370 (3) (434 SE2d 479) (1993).

[13] *Wilson v. Reed*, 246 Ga. 743 (1) (272 SE2d 699) (1980); *Sheffield v. State*, 237 Ga. App. 701, 702 (2) (516 SE2d 563) (1999); *Parrott v. State*, 206 Ga. App. 829, 835 (5) (427 SE2d 276) (1992); *Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992); *Johnson v. State*, 204 Ga. App. 453 (419 SE2d 741) (1992); *Banks v. State*, 201 Ga. App. 266, 268 (410 SE2d 818) (1991).

[14] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[15] *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

[16] *Rutledge v. State*, 237 Ga. App. 390, 392 (2) (515 SE2d 1) (1999).

4. Finally, we reject Brown's contention that "this case is controlled by the equal access rule."

The "equal access" rule applies only where the *sole* evidence of possession of contraband found in a vehicle is the defendant's ownership of the vehicle.[17] Here, Brown's possession of the cocaine was not based solely upon the fact that he owned the car in which it was found. Rather, Brown was the only person standing beside the car; the cocaine was in plain view and visible in the backseat of the car; Brown was the only person with immediate access to the drugs plainly visible and accessible through the broken backseat window; Brown was the only person who fit the description of the reported drug seller; and Brown attempted to leave the car when the police arrived.[18] In this case, there was circumstantial evidence to support the jury's determination that went beyond the inference of constructive possession which arises from ownership, alone. "Under these circumstances, the evidence was sufficient to connect the defendant to the possession of the cocaine though the evidence would have authorized the jury to find that others had equal access to it."[19]

Further, "whether the equal access evidence is sufficient to rebut the inference of possession is a question for the jury."[20] The trial court charged the jury on equal access, the jury rejected such defense, and its verdict is supported by the evidence in that a rational trier of fact could have found Brown guilty beyond a reasonable doubt of possession of cocaine with intent to distribute.[21]

*Judgment affirmed. Johnson, C. J., Pope, P. J., Blackburn, P. J., and Mikell, J., concur. Barnes and Phipps, JJ., dissent.*

BARNES, Judge, dissenting.

Because Brown's conviction is based on inadmissible and wholly nonprobative hearsay, I must respectfully dissent.

The majority's analysis of the technical deficiencies of Brown's objections below overlooks one crucial fact: on appeal Brown has challenged the sufficiency of the evidence to sustain his conviction. Therefore, we must consider whether his conviction is based on admissible evidence, because hearsay, as we all well know, is "wholly without probative value, and its introduction without objection does not give it any weight or force whatever in establishing a fact." *Hig-*

---

[17] *Graham v. State*, 242 Ga. App. 361, 362 (529 SE2d 641) (2000); *Coleman v. State*, 229 Ga. App. 642, 643-644 (494 SE2d 549) (1997).

[18] See id.; *Graham v. State*, supra.

[19] *Carlisle v. State*, 242 Ga. App. 253, 255 (1) (529 SE2d 385) (2000).

[20] *Visser v. State*, 237 Ga. App. 798, 800 (516 SE2d 840) (1999); *Knox v. State*, 216 Ga. App. 90, 92 (3) (453 SE2d 120) (1995); *Newman v. State*, 216 Ga. App. 73, 74-75 (3) (453 SE2d 117) (1995); see also *Carlisle v. State*, supra.

[21] *Jackson v. Virginia*, supra.

*gins v. Trentham*, 186 Ga. 264 (1) (197 SE 862) (1938). Thus, the majority's analysis about Brown's trial counsel's objections below is a diversion from the real issue in the case: Is Brown's conviction supported by admissible evidence or nonprobative hearsay?

The essential testimony supporting Brown's conviction is hearsay. "Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). Here, the description of the person who was dealing drugs was presented through the testimony of Officer Jones but was based on the anonymous tip[22] relayed to him by his dispatcher. This was the only information to which the prosecution could point that connected Brown to the actual selling of drugs, and it is this description on which the whole case is based.

Because the anonymous tip rested solely on the credibility of the unknown tipster, it was hearsay. The other evidence allegedly supporting Brown's conviction was the similar transaction testimony that was introduced by one officer reading another officer's statement that was included in a City of Atlanta Bureau of Police Services Offense Report. This statement was also hearsay, and the fact that it was contained in a police report does not make it any less so.

1. The majority says the anonymous tip is not hearsay because the information provided was admissible under OCGA § 24-3-2 to explain the officer's conduct and thus is sufficient to sustain Brown's conviction. This position fails for two reasons: (a) OCGA § 24-3-2 is inapplicable here because there was no need to explain the officer's conduct, and (b) even if admissible for that purpose, the evidence cannot be considered to prove Brown's guilt.

(a) In *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982), our Supreme Court held:

> To prevent an overly broad interpretation of [OCGA § 24-3-2], we adopt the following: When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. Green, Ga. Law of Evidence, § 300 (1957); *Brewer v. Henson*, 96 Ga. App. 501, 502 (100 SE2d 661) (1957). But where the conduct and motives

---

[22] Although the dispatcher apparently termed it a complaint by a concerned citizen, this was, in fact and law, an anonymous tip because the identity of the tipster was unknown. See *Florida v. J. L.*, 529 U. S. 266 (120 SC 1375, 146 LE2d 254) (2000). Moreover, even this information was hearsay because the dispatcher did not testify.

of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc., on which he or she acted shall not be admissible under [OCGA § 24-3-2].

Id. at 867. Then, in *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984), the Supreme Court again visited the problem of the trial courts' and this court's overly broad use of OCGA § 24-3-2. Explaining the need for the *Momon* rule, the court stated:

The necessity for this interpretation will be seen, we believe, from the fact that almost all conduct of almost all people can be "explained" almost always by something which they may have heard or read. Following the literal language of the Code section to its logical conclusion would, therefore, authorize the conviction of a citizen solely upon the testimony of an investigating officer, who, "to explain conduct" in initiating and continuing his investigation, might recount to the jury everything which he had heard or read about the case. That is trial by dossier, for every element of an investigation can serve, in some manner, to "explain conduct" of the investigator.

Id. at 535 (1). The court went further to state that:

only in *rare* instances will the "conduct" of an investigating officer need to be "explained," as in practically every case, the motive, intent, or state of mind of such an officer will not be "matters concerning which the truth must be found." At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with why an investigating officer did something. If the hearsay rule is to remain a part of our law, then OCGA § 24-3-2 (Code Ann. § 38-302) must be contained within its proper limit. Otherwise, the repetition of the rote words "to explain conduct" can become imprimatur for the admission of rumor, gossip, and speculation.

(Emphasis in original omitted and supplied.) Id. at 536 (1). The court concluded with this warning: "Prosecutors and trial judges would be well advised to walk wide of error in the proffer and admission of evidence under the provisions of OCGA § 24-3-2 (Code Ann. § 38-302)." Id. at 537 (3). Today, we abandon the rules announced in *Momon* and *Teague*.

Moreover, merely intoning that the evidence was relevant to

explain the officer's conduct does not make this evidence admissible. "[T]he admissibility of evidence under OCGA § 24-3-2 is not a determination based only on its relevancy to explain conduct. There is a further requirement: The conduct to be explained must *itself* be a relevant issue in the case." (Emphasis in original.) *Noles v. State*, 172 Ga. App. 228, 229 (5) (322 SE2d 910) (1984).

Recently, our Supreme Court again revisited this issue and held that an officer's conduct in investigating a case was not relevant at trial and that testimony explaining the investigation was inadmissible. *Weems v. State*, 269 Ga. 577, 578-579 (2) (501 SE2d 806) (1998). Significantly, our Supreme Court rejected the possibility "that the jury may find police behavior so inexplicable as to cast doubt on the prosecution," as a reason warranting admission under OCGA § 24-3-2. Id. at 579 (2). *Ross v. State*, 210 Ga. App. 455 (436 SE2d 496) (1993), relied upon by the majority, was cited by the Supreme Court as an example of such cases in rejecting this theory.

The officer's conduct was not relevant to any issue in this case, and the prosecution made no effort to establish that it was. Therefore, the trial court erred by even allowing the information from the anonymous tipster to be repeated to the jury.

Even if we were to assume that the officer's conduct needed explaining, he explained his conduct when he replied affirmatively to the prosecutor's question whether he was responding to a call at Eastlake Meadows Housing Project regarding drug activity. The anonymous tipster's description of the alleged suspect was not a necessary part of this explanation.

(b) If the majority is correct in holding that the officer's testimony about what the dispatcher told him the anonymous tipster told her was admissible, the majority is still incorrect when it uses this evidence to support Brown's conviction. "(S)uch testimony is admissible under the code section only as original evidence 'to explain conduct' of the investigating officer, not as original evidence of the defendant's guilt." *Anderson v. State*, 247 Ga. 397, 398 (1) (276 SE2d 603) (1981), quoting *Harrell v. State*, 241 Ga. 181, 185 (243 SE2d 890) (1978). Thus, the officer's testimony about the description of the man allegedly selling drugs was "not admissible as substantive proof of the matters asserted therein." *Goodman v. State*, 167 Ga. App. 378, 379 (1) (306 SE2d 417) (1983). Therefore, this testimony cannot be used to support Brown's conviction.

2. Although I agree that some police reports are business records and some material contained in such police reports is admissible, not all information in otherwise admissible police reports is admissible. Further, I am not satisfied that all police reports, even if maintained in the regular course of police business, are admissible. See *Stewart v. State*, 246 Ga. 70, 74 (3) (268 SE2d 906) (1980) (records collected in

anticipation of investigation or litigation, not made in the regular course of business, are inadmissible).

In this instance, the particular report is a City of Atlanta Bureau of Police Services Offense Report. The Offense Report contains such headings as "Arrested Person/Suspect Information. Can a suspect be identified? Can a suspect be named? M.O. Data. Is there a significant recurring M.O.? Is there a special reason why this crime should receive a follow-up continuing investigation other than the existence of solvability factors above?" This is not a report or record whose purpose is to record factual entries. I am not satisfied that a report like this, that is plainly intended to be used in the investigation and prosecution of crimes, should be treated as a business record for purposes of admissibility.

Nevertheless, we need not resolve that issue to dispose of this case. The statement of the police officer read by another officer to prove the similarity of Brown's prior conviction is inadmissible hearsay as defined in OCGA § 24-3-1. The majority holds that this is not so because the narrative statement was part of the Offense Report.

If the majority is correct on this point, a major alteration in the administration of our system of criminal prosecutions may result. Because almost all prosecutions are based on incidents in which witness statements are taken and those, along with police officers' statements, are made part of some police agency's reporting system, it is reasonable to expect that in the future it might become the rare case in which the witnesses actually come to court and testify.

The majority's holding that the narrative statement is admissible proceeds from the erroneous concept that witness statements that would otherwise be inadmissible are made admissible merely because they are attached to or included in a business record. This is not the law.

> A police report may be admissible as a business entry under [OCGA § 24-3-14] where a proper foundation is laid, but when it includes hearsay statements, opinion evidence, and conclusions, it is not generally admissible. See *Wesley v. State*, 225 Ga. 22 (2) (165 SE2d 719) [(1969)]; *Calhoun v. Chappell*, 117 Ga. App. 865 (2a) (162 SE2d 300) [(1968)].

*Pickett v. State*, 123 Ga. App. 1, 2 (2) (179 SE2d 303) (1970). Police reports that contain conclusions, opinion, estimates, and impressions of third parties who are not before the court are not admissible under the business records exception to the hearsay rule. *Malcolm v. State*, 263 Ga. 369, 370-371 (3) (434 SE2d 479) (1993). Accord *Moody v. State*, 244 Ga. 247, 249 (4) (260 SE2d 11) (1979) (statements of third parties not before the court are not admissible even though submit-

ted as part of business records).

3. Under the circumstances, I find that the evidence is insufficient to support Brown's conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The police dispatch evidence was improperly admitted to explain why the officer immediately stopped and detained Brown and, even if admissible, cannot be used to support the conclusion that Brown actually sold or possessed drugs. *Goodman v. State*, supra, 167 Ga. App. at 379 (1). Because the similar transaction evidence was inadmissible hearsay, it cannot be used to support Brown's conviction even without an objection on this basis below. *Howell Mill/Collier Assoc. v. Pennypacker's, Inc.*, 194 Ga. App. 169, 171 (2) (390 SE2d 257) (1990). See *Handley v. Limbaugh*, 224 Ga. 408, 413 (4) (a) (162 SE2d 400) (1968).

Thus, the only competent evidence remaining to support Brown's conviction shows that he was standing next to his car in which crack cocaine was lying in plain view on the backseat. Relying upon the equal access rule, Brown asserts this evidence cannot support his conviction for possession of cocaine with the intent to distribute.

> The equal access rule is as follows: If the only evidence of possession of contraband found in an automobile is that the defendant is the owner, driver, or is in possession of the vehicle, and there is evidence of prior use of the vehicle by other parties in the recent past, or equal access to the accessible portions of the vehicle by other parties, then the prior possession or equal access rule would demand an acquittal. However, if there is additional evidence of possession of contraband by the accused — either circumstantial or direct, other than mere ownership, use or possession of the vehicle, then an issue is made for the jury.

(Citation and punctuation omitted.) *Mackey v. State*, 234 Ga. App. 554, 555 (507 SE2d 482) (1998). In this case, the equal access rule demands an acquittal because Brown presented evidence that his car had been inoperable for over a year, that its rear window was broken, and that three other men were selling drugs out of it shortly before his arrest. The majority's assertion that Brown was the only person standing near the car is not factually correct. Likewise, the State presented no evidence that Brown was standing by the car's window.

Because I cannot say that the remaining evidence is sufficient to sustain Brown's conviction, I would reverse. Although the jury returned a verdict of "guilty," they did so only after the trial court

gave them an *Allen*[23] charge. It cannot be said that the evidence was overwhelming.

Therefore, I respectfully dissent. I am authorized to state that Judge Phipps joins in this dissent.

DECIDED JULY 14, 2000 ▮▮▮▮▮▮▮▮

*Lynn M. Friedewald*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Jennifer M. Daniels, Assistant District Attorneys*, for appellee.

---

[23] See *Allen v. United States*, 164 U. S. 492, 501-502 (9) (17 SC 154, 41 LE 528) (1896).